**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| United States of America,<br><br>                 Plaintiff,<br><br>    v.<br><br>2011 Orange Chevrolet Camaro VIN:<br>2G1FA1EDXB9107244,<br><br>               Defendant. | Civil Action No.:  **8:23-cv-299 (GTS/ML)** |

## VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

Plaintiff, United States of America, by its attorneys, Carla B. Freedman, United States Attorney for the Northern District of New York, and Elizabeth Conger, Assistant United States Attorney, brings this verified complaint for forfeiture *in rem* against the above-captioned property ("the Defendant Vehicle") and alleges the following in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure, Title 8, United States Code, Section 1324(b)(1).

## THE PARTIES

1.      The Plaintiff is the United States of America.

2.      The Defendant Vehicle is an Orange 2011 Chevrolet Camaro VIN: 2G1FA1EDXB9107244 registered to Durvin V. Quinonez Samayoa at 1804 Mount Pisgah Lane, Silver Springs, Maryland 20903.

3.      The Defendant Vehicle is presently in the custody of the United States Customs and Border Protection ("CBP").

## BASIS FOR FORFEITURE

4.      This action *in rem* is brought pursuant to Title 8, United States Code, Section 1324(b)(1), and Rule G of the Supplemental Rules for Certain Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supplemental Rule G").

5.      The Defendant Vehicle is subject to forfeiture pursuant to Title 8, United States Code, Section 1324(b)(1) as property used to facilitate violations of Title 8, United States Code, Sections 1324(a)(1)(A)(ii) and (v)(I).  Section 1324(b)(1) provides for the forfeiture of:

> (1) Any conveyance, including any vessel, vehicle, or aircraft, that has been or is being used in the commission of a violation of subsection (a), the gross proceeds of such violation, and any property traceable to such conveyance or proceeds, shall be seized and subject to forfeiture.

> 8 U.S.C. § 1324(b)(1).

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over this action pursuant to Title 28, United States Code, Section 1345 and 1355.

7.      Section 1345 provides district courts with "original jurisdiction of all civil actions, suits or proceedings commenced by the United States." 28 U.S.C. § 1345.

8.      Section 1355(a) provides district courts with "original jurisdiction, exclusive of the courts of the States, of any action or proceeding for the recovery or enforcement of any fine, penalty, or forfeiture, pecuniary or otherwise, incurred under any Act of Congress."  28 U.S.C. § 1355(a).

9.      This Court has *in rem* jurisdiction over the Defendant Vehicle and venue is properly situated in this district pursuant to Title 28, United States Code, Section 1355(b), which provides

that a forfeiture action or proceeding "may be brought in…the district court for the district in which any of the acts or omissions giving rise to the forfeiture occurred."  28 U.S.C. § 1355(b)(1)(A).

## **FACTS**

10.     On September 9, 2022, a U.S. Customs and Border Protection ("CBP") agent observed images at the Champlain, New York station of the Defendant Vehicle, an orange colored Chevrolet Camaro two-door sedan with a distinct black front fender on the passenger side.

11.     The Defendant Vehicle appeared to have Maryland license plates and was travelling north on Meridien Road in Champlain, New York, a dead end road that stops at the United States and Canadian international boundary.  This location is approximately fifty (50) yards south of the United States and Canada border and is clearly marked with an international boundary gate that has signs in English and French stating that it is the border.

12.     Very few residents live in this area proximate to Merridien Road, and most residents have New York State license plates.

13.     The area has become a very active location for the smuggling of people entering illegally into the United States from Canada.

14.     Recent smuggling cases in the area involved vehicles registered out of state.

15.     A Border Patrol Agent ("the Agent") noted the Maryland plates as suspicious as recent smuggling cases in the area had involved vehicles registered from outside of New York State, particularly vehicles with Maryland plates.

16.     After the Agent observed another image of the Defendant Vehicle travelling back south on Meridien Road, he attempted to find the vehicle.  The Agent located the Defendant Vehicle parked on the side of Meridien Road, facing south.

17.     Utilizing his unmarked service unit, the Agent parked alongside the Defendant Vehicle.   As he approached the driver's side of the Defendant Vehicle, the Agent, dressed in full duty uniform, identified himself as a Border Patrol Agent.

18.     He asked the driver of the Defendant Vehicle, later identified as Yudel Ortega-Sandoval ("Ortega-Sandoval"), where he was from.

19.     Ortega-Sandoval stated that he was from New York.

20.     When the Agent asked Ortega-Sandoval about his citizenship, Ortega-Sandoval stated "New York."

21.     The Agent then asked Ortega-Sandoval about his citizenship in Spanish, to which Ortega-Sandoval replied that he was a citizen of Guatemala.

22.     While speaking with Ortega-Sandoval, the Agent observed a male wearing a backpack run out of the woods from Canada and illegally enter into the United States.  The man was smiling, and running toward the Defendant Vehicle.

23.     As the man approached the vehicle, the Agent identified himself as a Border Patrol Agent and asked the man about his citizenship in English.

24.     The man, later identified as Tomas Mejia-Marroquin ("Mejia-Marroquin"), did not respond.  When asked in Spanish, Mejia-Marroquin stated "Guatemala."

25.     As the Agent continued to question Mejia-Marroquin in Spanish, Mejia-Marroquin confirmed that he had just crossed illegally into the United States.

26.     The Agent, suspecting that Ortega-Sandoval was parked on Meridien Road to pick up Mejia-Marroquina and smuggle him into the United States, and noting that the Defendant Vehicle was not in park, asked Ortega-Sandoval to turn off the vehicle and hand him the keys.

27.     Ortega-Sandoval did not comply.

4

28.     The Agent then instructed Ortega-Sandoval in Spanish to turn off the vehicle and hand him the keys.  Ortega-Sandoval responded "okay," but again failed to comply.

29.     At that time, the Agent realized that Mejia-Marroquin was looking back towards the border and suspected that he was considering fleeing back to Canada.

30.     He told Mejia-Marroquin that he was under arrest and told him to sit down.

31.     While the Agent was instructing Mejia-Marroquin, he noticed that the Defendant Vehicle's brake lights were on.

32.     The Agent suspected that Mejia-Marroquin was about to flee, and again instructed him in Spanish to turn off the Defendant Vehicle and give him the keys.

33.     Ortega-Sandoval looked at the Agent, and placed one of his hands on the steering wheel and the other on the Defendant Vehicle's shifter.

34.     Believing that Ortega-Sandoval was about to flee, the Agent reached inside the Defendant Vehicle to remove the keys from the ignition.

35.     As the Agent reached inside for the keys, he heard the tires squeal, and Ortega-Sandoval sped off at a high speed.

36.     The Agent's arm was stuck in the Defendant Vehicle as Ortega-Sandoval sped away, and the Agent was dragged by the vehicle.

37.     After a short distance, the Agent was able to free his arm from the Defendant Vehicle.  Ortega-Sandoval sped away.

38.     The Agent notified other agents about what had happened through his service radio, and provided them with a description of the Defendant Vehicle and Ortega-Sandoval.

39.     Mejia-Marroquin was taken into custody and transported back to the station for questioning and processing.

40.     The Agent had visible redness, scratching, and bruising on his left forearm where it had been caught inside of the Defendant Vehicle.

41.     Shortly thereafter, the Defendant Vehicle was observed by another agent as it recklessly sped south on Oak Street in Champlain.

42.     Ortega-Sandoval was observed as he drove through a stop sign at the intersection of Elm Street and Main Street without stopping.

43.     As the Border Patrol Agent followed the Defendant Vehicle, he observed a school bus carrying children.  Out of concern for their safety, the Border Patrol Agent did not engage the Defendant Vehicle or intiate his emergency lights.

44.     The Defendant Vehicle slowed down and stopped behind the school bus.  Other agents soon arrived and positioned their vehicles around the Defendant Vehicle so that Ortega-Sandoval could not flee again.

45.     The agents announced themselves to Ortega-Sandoval and ordered him to turn off and exit the Defendant Vehicle.

46.     Ortega-Sandoval ignored the agents' instructions.

47.     One agent approached the Defendant Vehicle and was able to unlock the doors through an open window.

48.     Ortega-Sandoval again ignored the agents' commands and did not exit the Defendant Vehicle.  He was removed from the Defendant Vehicle, placed under arrest, and taken back to the station for further investigation.

49.     At the station, Ortega-Sandoval was issued his Miranda warning and agreed to speak with law enforcement.

50.     He stated that he previously picked up people on two other occasions, with the first occasion as having occurred approximately fifteen (15) days earlier.   He stated that he was paid $600 by the family of the person he had picked up when they arrived to meet him at a park in Manhattan.

51.     He further stated that he had picked up another person on the prior Saturday, (September 3, 2022), and said that this person had paid him $600 when Ortega-Sandoval had dropped him off by a bridge in Manhattan.

52.     Ortega-Sandoval claimed that a person who started working at his cousin's shop put him in touch with a person named "Sergio" who resides in Canada.  He claimed that he made arrangements with Sergio to pick up Mejia-Marroquin that day and would be paid $600 once he dropped Mejia-Marroquin off in New York City.

53.     Ortega-Sandoval claimed that he erased his messages from Sergio when the Agent was interviewing him.

54.     He said that he was approached by the Agent as he waited to pick up Mejia-Marroquin, and that the Agent told him to turn off the Defendant Vehicle.  When the Agent put his hand inside the Defendant Vehicle, Ortega-Sandoval said that he got scared and sped off.

55.     He said that he was aware of the danger he put members of the local community in as he fled through town.

56.     A trace amount of a white substance that tested positive to the presence of cocaine was discovered hidden inside Guatemalen currency located inside of Ortega-Sandoval's cell phone case.

57.     The Defendant Vehicle was seized and placed in CBP custody.

### **CONCLUSION**

58.     The facts set forth above support a reasonable belief, as required by Supplemental Rule G(2), that the government will be able to meet its burden of proof at trial.

WHEREFORE, pursuant to Supplemental Rule G, Plaintiff, the United States of America, respectfully requests that the Court:

(1)     Issue a Warrant of Arrest *In Rem*, in the form submitted with this verified complaint;

(2)     Direct any person having any claim to the Defendant Real Property to file and serve a Verified Claim and Answer as required by 18 U.S.C. § 983(a)(4) and Supplemental Rule G(5)(a) and (b);

(3)     Enter judgment declaring the Defendant Vehicle be forfeited and condemned to the use and benefit of the United States; and

(4)     Award such other and further relief to the United States as it deems proper and just.

Dated: March 2, 2023                           Respectfully submitted,

                                               CARLA FREEDMAN
                                               United States Attorney


                                   By:     */s/ Elizabeth A. Conger*
                                           Elizabeth A. Conger
                                           Assistant United States Attorney
                                           Bar Roll No. 520872

VERIFICATION

STATE OF VERMONT              )
                             )   ss:
COUNTY OF FRANKLIN           )

Dennis Rascoe, being duly sworn, deposes and states:

I am a Border Patrol Agent with U.S. Customs and Border Protection ("CBP"). I have read the foregoing Complaint for Forfeiture and assert that the facts contained therein are true to the best of my knowledge and belief, based upon knowledge possessed by me and/or on information received from other law enforcement officers.

Dated this 3rd day of March, 2023.

Dennis Rascoe, Border Patrol Agent
U.S. Customs and Border Protection

Sworn to and subscribed before me this ___3rd___ day of March, 2023.

Notary Public   Commission expires 1/31/2025

9